Filed 2/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAVID BELASCO,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>GARY LOREN WELLS et al.,<br><br>        Defendants and Respondents. | B254525<br><br>(Los Angeles County Super. Ct. No. YC067940) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Affirmed as to defendants Gary Loren Wells and American Contractors Indemnity Company, and dismissed as to defendant Glenn Hatch.

        Fruchter & Sgro, W. Randall Sgro, Steve J. Kim, for Plaintiff and Appellant.

        Splinter & Thai, Robert G. Splinter, Min N. Thai, for Defendants and Respondents Gary Loren Wells and American Contractors Indemnity Company.

        Glenn Hatch, in pro. per., for Defendant and Respondent.

_____

Plaintiff David Belasco bought a newly constructed Manhattan Beach residence in 2004 from the builder defendant Gary Loren Wells.  In 2006, Belasco filed a complaint against Wells with the Contractors State License Board (the Board) regarding alleged construction defects.  Belasco and Wells settled the dispute in 2006 by written agreement, with Wells paying $25,000 and Belasco executing a release and a Civil Code section 1524[1] waiver of all known or unknown claims.  In 2012, Belasco filed this action against Wells, Wells's surety American Contractors Indemnity Company (American Contractors),[2] and Glenn Hatch,[3] based on an alleged defect in the roof that Belasco discovered in 2011.

The trial court granted summary judgment in favor of Wells and American Contractors, ruling that the action was barred as a matter of law by the 2006 settlement that included a release and waiver of all claims, known or unknown, in connection with the construction of the property.  Belasco filed a timely notice of appeal, which he served on all defendants.

Belasco contends the trial court erred in granting summary judgment because:  (1) the general release and section 1542 waiver in the 2006 settlement agreement for patent construction defects is not a "reasonable release" of a subsequent claim for latent construction defects within the meaning of section 929 and the Right to Repair Act (the Act) (§ 895 et seq.); (2) a reasonable release can only apply to a "particular violation" and not to a latent defect under the language of section 945.5, subdivision (f), and the

---

[1] All statutory references are to the Civil Code, unless otherwise indicated.

[2] American Contractors Indemnity Company was erroneously named in the complaint as Surety Company of the Pacific.

[3] Hatch was substituted into the action as a Doe defendant.  The complaint contains no allegations against him.  As discussed more fully below, the record contains no judgment against Hatch, but Belasco served him with the notice of appeal and listed Hatch in the civil case information statement on appeal as a party "who will participate in the appeal."  Belasco's briefs on appeal were served on Hatch.

2

2006 settlement was too vague to be a valid because it does not reference a "particular violation;" (3) section 932 specifically authorizes an action on "[s]ubsequently discovered claims of unmet standards;" (4) public policy prohibits use of a general release and section 1542 waiver to bar a subsequent claim for latent residential construction defects; and (5) a genuine issue of material fact exists concerning Belasco's fraud and negligence claims that would have voided the settlement pursuant to section 1668.

We hold the trial court properly granted summary judgment in favor of Wells and American Contractors based on the express language of the 2006 settlement. Belasco's ineffective appeal as to Hatch is dismissed, and Hatch is awarded his costs on appeal.

**Allegations of Belasco's 2012 Complaint**

Belasco's complaint included causes of action for breach of contract, complaint on Contractor's License Bond, fraud, and revocation/suspension of contractor's license.[4] Belasco alleged that his 2006 complaint against Wells with the Board was resolved by Wells agreeing to pay a sum of money to repair the property. A defect in the roof was unknown at the time of the settlement.

The first cause of action alleged that the defective roof breached the statutory warranty on new construction under section 896. The second cause of action alleged American Contractors is liable as Wells's surety. The third cause of action, for fraud, alleged Wells falsely represented that the roof was installed by a competent, licensed roofer (Action Roofing), and that Wells intended to mislead Belasco, who justifiably relied on the representations when he agreed to buy the home. The fourth cause of action

---

[4] Although the caption of the complaint indicates a cause of action for negligent misrepresentation, the body of the complaint instead contains a cause of action for negligent construction without regard to negligent misrepresentation.

sought suspension or revocation of Wells's contractor's license under Business and Professions Code section 7106.

## Answers to the Complaint

Wells entered a general denial of the allegations, and asserted 17 affirmative defenses. The ninth affirmative defense asserted that Belasco's claims are barred by the 2006 release and waiver.

Hatch, representing himself, also filed an answer, including a general denial and ten affirmative defenses.

## The Motion for Summary Judgment

Wells and American Contractors[5] moved for summary judgment on the basis that Belasco's 2012 action was barred by a 2006 settlement of Belasco's prior complaint about Wells to the Board. In the prior settlement, Belasco signed a release and waiver of all known or unknown construction defects in the home in return for a cash settlement of $25,000.

Wells cited *San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048 (*San Diego Hospice*) for the proposition that Belasco's 2006 release and waiver of any and all claims, known or unknown, is valid and bars this action. The clear and unambiguous waiver and release were not negated by fraud, because there was no fraudulent misrepresentation by Wells or reliance by Belasco. Belasco, an attorney who was represented by counsel, expressly acknowledged his understanding of the scope of the agreement.

As a surety, American Contractors liability is no greater than that of Wells. American Contractors is entitled to summary judgment for the reasons argued by Wells.

---

[5] Hatch did not join in the motion for summary judgment.

Wells and American Contractors relied on the following as undisputed facts. Wells holds a Class B General Building Contractor license issued by the Board. Wells built a new residence in Manhattan Beach, which he sold to Belasco in 2004. His surety was American Contractors. Belasco had the premises inspected before the sale, and several corrections were made at the suggestion of the inspector.

After escrow closed, Belasco gave Wells's agent, Glenn Hatch, a list of approximately 150 items improperly built on the property. Belasco filed a complaint against Wells with the Board regarding construction defects.

An arbitration began in 2006 between Belasco and Wells, with both parties represented by counsel. Belasco is a patent attorney, licensed since 1995, whose practice includes a small amount of litigation. Three hours into the arbitration, and before a decision was reached, Wells offered to settle the dispute for $25,000, which Belasco accepted.

The settlement was memorialized in a writing signed by Belasco and his attorney. Belasco read and understood the agreement.

Under the terms of the agreement, claims were defined as follows:

> "CLAIMS as used herein shall refer to any and all claims, demands, lawsuits, complaints, causes of action and/or petitions for damages (economic and non-economic; general and special; compensatory and punitive) sustained by result of any and all known and unknown construction defects, design defects, product defects, property damage, loss of use, relocation costs, loss of services, attorney's fees, expert's fees, investigation costs, litigation costs, interest, employee expenses, loss-of-rent, business losses, lost profits, stigma, and diminution in value, personal injury, bodily injury, emotional distress, pain and suffering, death, dismemberment, loss of earnings, loss of earning capacity, loss of consortium, occurring at any time in the past, present and/or future and

5

arising out of or related to or manifesting to the acts or omissions by any of the RELEASEES."

Section 3 of the settlement contained a section 1542 waiver and release, as follows:

"It is understood and agreed that I and all future purchasers hereby EXPRESSLY WAIVE all rights under section 1542 of the Civil Code of California, which provides as follows: [¶] Certain Claims Not Affected by General Release . . . A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH DEBTOR."

Finally, section 4 provided that Belasco entered into the agreement based on his own judgment, and without influence by any representations:

"4.1.  I hereby declare and represent that the damages sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I rely wholly upon my judgment, belief, and knowledge of the nature, extent, and duration of said damages, and that I have not been influenced to any extent whatsoever in making this Release of All Claims by any representations or statements regarding said injuries, or regarding any other matters, made by any of the RELEASEES, or by any person or persons representing any of the RELEASEES, or by any physician or surgeon employed by any of the RELEASEES."

In December 2011, Belasco tried to identify the roofing contractor on the property after he noticed a problem with his entryway, which he thought was caused by a leaking roof.  Records on file with the City of Manhattan Beach showed that Action Roofing was the contractor, but Belasco learned from Action Roofing that it had bid on the job but did

6

not perform the work. Wells never gave Belasco a list of subcontractors who worked on the property, nor had he made any representations regarding subcontractors. Belasco believes that Wells intentionally misled him to sign the release by including in the building permit the name of a roofer who did not do the job. Wells did not disclose to Belasco that Wells installed the roof "in-house."

Wells testified in deposition that the permit reflecting Action Roofing as the subcontractor for the roof was the result of a secretarial error. The house, including the roof, was approved by the City of Manhattan Beach before the sale to Belasco, and it would not have passed inspection if not built to code.

Belasco paid approximately $17,500 for repair of the roof and approximately $1,400 to fix the entryway.

**Opposition to Summary Judgment by Belasco**

Belasco raised the following arguments in opposition to summary judgment. The section 1542 waiver entered in 2006 cannot be applied to latent defects under section 929 of the Act. A cash settlement that includes a section 1542 waiver of unknown claims is unreasonable as a matter of law under section 929. Wells had a statutory duty to warrant that the home was built in a workmanlike manner for a period of 10 years, and Belasco's right to that protection was not waivable. Wells had tried to correct the error regarding the roofing contractor on the permit, but left the city's office before making the correction.

*San Diego Hospice, supra,* 31 Cal.App.4th 1048, relied upon by Wells, is distinguishable on its facts, because Wells and Belasco were not on equal footing at the time of the 2006 settlement. Only Wells knew who installed the roof, Wells mislead the City of Manhattan Beach in the permit, and he did not inform Belasco that the roof was not installed by a roofing contractor. Additionally *San Diego Hospice* did not deal with a statutory warranty, while the Act specifically provides for a 10-year warranty on the

7

workmanship of a roof of new residential construction, as does Code of Civil Procedure section 337.15.

Section 926 prohibits a release or waiver in exchange for repair work; a builder may not obtain a release or waiver of any kind in exchange for the repair work mandated by the Act. There is no evidence that the 2006 settlement contemplated a problem with the roof. The settlement was for the known defects, Belasco had no knowledge of the roof defects at that time, and had no way at that time to discover them as they were latent defects. Wells had a duty to disclose to Belasco who performed the work on the project and he committed fraud when he named Action Roofing as the contractor to the City of Manhattan Beach when he applied for the permit.

**The Reply to the Opposition to Summary Judgment**

Wells and American Contractors argued in reply that the issue is whether the 2006 release bars Belasco's 2012 claim. Although a release *in exchange for repairs* is prohibited under the Act, section 929, expressly allows a builder to ". . . obtain a reasonable release in exchange for the cash payment. The builder may negotiate the terms and conditions of any reasonable release in terms of scope and consideration in conjunction with a cash payment under this chapter." (§ 929, subd. (b).) In addition, a builder may assert a defense to a claim under the act if the builder has obtained a valid release. (§ 945.5, subd. (f).)

The 2006 release was the reasonable result of an arms-length negotiation, with counsel on both sides, that settled Belasco's 2006 claim and all other potential claims in return for a $25,000 payment by Wells. Belasco, an attorney, testified that he read and understood the terms each of the three sections in the release referring to broad waivers of claims before signing the agreement.

8

The fact that Wells was aware that the roof subcontractor was listed incorrectly in the permit is not relevant.  Wells had no evidence the roof was allegedly defective in 2006, and the condition of the roof is unrelated to the identity of the roofing contractor.

Because the law permits a release and waiver of unknown claims, there was no need for the parties to have contemplated an issue with the roof in 2006 when the settlement was signed.  Belasco knowingly assumed the risk of unidentified construction by releasing Wells of all liability in return for $25,000.

**Ruling of the Trial Court**

Summary judgment was granted in favor of Wells and American Contractors.  The comprehensive nature of the release, which includes a section 1542 waiver, unequivocally provides that Belasco expressly waives any and all claims he may have now or in the future. This agreement was an arms-length settlement negotiated while Belasco was represented by counsel.  Belasco and his attorney agreed to the language in the release and did not insist that the Section 1542 waiver be stricken in order to preserve his claims to unknown defects.  The executed release of all claims provides a complete defense to this action and is enforceable against claims which are later discovered by the releaser under the holding in *San Diego Hospice*, *supra*, 31 Cal.App.4th 1048.

The court rejected Belasco's reliance on section 926, which states, "The builder may not obtain a release or waiver of any kind in exchange for the repair work mandated by this chapter."  Here, the release was not in exchange for repair work but was in exchange for a cash settlement, rendering section 926 inapplicable because the release here was in exchange for a cash settlement of $25,000.  Belasco also waived the 10-year warranty provided by Code of Civil Procedure section 337.15 by signing the 2006 agreement.

The court disagreed with Belasco's argument that section 932 allowed him to file a subsequent claim for newly discovered defects after a settlement.  Section 932 specifies

9

that such claims may be filed "unless otherwise agreed to by the parties." Here, there was a settlement offer negotiated and executed in exchange for a full release of liability that included a section 1542 waiver.

While section 932 is a statutory protection for buyers of new construction, buyers also have the freedom to contract away that protection. Pursuant to section 929, a builder may offer a reasonable release in exchange for a cash settlement without repair, the homeowner may accept or reject the offer, and if rejected, the action may proceed.

The trial court rejected Belasco's contention that the release was not "reasonable." The court also found Belasco failed to show the release was unenforceable, void, or against public policy. The incorrect information on the building permit with the City of Manhattan Beach was not material to the applicability and enforceability of the fully executed release negotiated in an arms-length transaction. Belasco offered no factual support for the contention that Wells knew of the alleged defect on the roof prior to executing the release agreement.

The court ruled that Belasco failed to establish that a release and section 1524 waiver is against public policy under the Act. To the contrary, section 945.5, subdivision (f), provides that a builder "may be excused, in whole or in part, from any obligation, damage, loss, or liability if the builder . . . can demonstrate" that "the builder has obtained a valid release" as an affirmative defense to a claimed violation of the Act.

**DISCUSSION**

Belasco raises various challenges to application of the 2006 settlement as a bar to his 2012 claim. None of the challenges have merit. In addition, we conclude that Belasco has caused Hatch to become a party to this appeal, the appeal against Hatch must be dismissed for want of an appealable judgment, and Hatch is entitled to costs on appeal.

10

**Standards of Review**

*Summary Judgment*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.)  In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'  (Code Civ. Proc., § 437c, subd. (*o*)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855.)"  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

*Statutory Interpretation*

"In construing statutes, we aim 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715; accord, *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 986; *Coachella Valley Mosquito and Vector Control District v. Cal. Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1087.) We look first to the words of the statute, 'because the statutory language is generally the most reliable indicator of legislative intent.'  (*Hassan v. Mercy American River Hospital,*

11

*supra,* at p. 715; accord, *Chavez v. City of Los Angeles, supra,* at p. 986; *People v. Toney* (2004) 32 Cal.4th 228, 232.)" (*Klein v. U.S.* (2010) 50 Cal.4th 68, 77.)

"When the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning, courts look to the statute's legislative history and the historical circumstances behind its enactment. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.) Finally, the court may consider the likely effects of a proposed interpretation because "'[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.'" (*Ibid.,* quoting *Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)" (*Klein v. U.S., supra,* 50 Cal.4th at p. 77.)

### *Interpretation of a Settlement Agreement*

"In interpreting the settlement agreement, we apply the general rules of contract interpretation. (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 953 [].) 'The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties. [Citations.]' (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763.)" (*Khavarian Enterprises, Inc. v. Commline, Inc.* (2013) 216 Cal.App.4th 310, 318.) "Because the parties do not rely on extrinsic evidence in construing the settlement agreement, we review the trial court's decision de novo. (See *Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23-24.)" (*In re Mission Ins. Co.* (1995) 41 Cal.App.4th 828, 835.)

### "**Reasonable Release" Under the Right to Repair Act**

Belasco's first argument focuses on the language of section 929, subdivision (b), which allows a builder to obtain a "reasonable release" in return for a cash payment and no repair. Belasco reasons that a reasonable release may only apply to a specific patent

violation, as reflected in subdivision (f) of section 945.5. An unknown, latent defect cannot be the subject of a reasonable release. Because the 2006 release pertained to patent defects, and had nothing to do with the later-discovered roof defects, the 2006 cash settlement was not a reasonable release of his 2011 claim for a defective roof.

"In response to the holding in *Aas* [*v. Superior Court* (2000) 24 Cal.4th 627 (*Aas*)]*,* the Legislature enacted Civil Code [fn. omitted] section 895 et seq. ('the Right to Repair Act' or 'the Act'). The Act establishes a set of building standards pertaining to new residential construction, and provides homeowners with a cause of action against, among others, builders and individual product manufacturers for violation of the standards (§§ 896, 936). The Act makes clear that upon a showing of violation of an applicable standard, a homeowner may recover economic losses from a builder without having to show that the violation caused property damage or personal injury (§§ 896, 942). In such an instance, the Act abrogates the economic loss rule, thus legislatively superseding *Aas.*" (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1202.)

A builder (as defined in § 911) is liable under the Act in original residential construction for failure to follow standards, inter alia, with respect to water issues that involve roofs and roofing systems. (§ 896, subd. (a)(4).) The Act has several procedural components, such as written notice of a claim (§ 910), acknowledgement by the builder of the claim (§ 913), the builder's right to inspect (§ 916), agreements to repair (§§ 917-918) and alternative dispute resolution (§ 928).

One form of resolution of disputes under the Act is repair by the builder. By statute, repair satisfies only the defect involved and cannot be the basis for release of liability for other defects. "The builder may not obtain a release or waiver of any kind in exchange for the repair work mandated by this chapter. At the conclusion of the repair, the claimant may proceed with filing an action for violation of the applicable standard or for a claim of inadequate repair, or both, including all applicable damages available under

Section 944." (§ 926.) Section 926 has no application here, because it is undisputed that the 2006 dispute was resolved with a cash settlement without repair.

Another form of dispute resolution recognized by the act is cash settlements agreed to by the parties. (§ 929.) Noticeably absent from section 929 is a prohibition against a release in return for a cash settlement; instead, a cash settlement expressly permits the builder to negotiate a reasonable release. Section 929 provides as follows: "(a) Nothing in this chapter prohibits the builder from making only a cash offer and no repair. In this situation, the homeowner is free to accept the offer, or he or she may reject the offer and proceed with the filing of an action. If the latter occurs, the standards of the other chapters of this title shall continue to apply to the action. [¶] (b) The builder may obtain a reasonable release in exchange for the cash payment. The builder may negotiate the terms and conditions of any reasonable release in terms of scope and consideration in conjunction with a cash payment under this chapter."

We conclude that the 2006 cash settlement, with a release and section 1524 waiver, was a "reasonable release" under the language of section 929. Belasco, himself an attorney and also represented by counsel, signed the 2006 settlement agreement. He admitted in deposition testimony that he read and understood the agreement. The agreement was explicit—in return for cash payment of $25,000, Belasco released Wells of "any and all claims" due to "any and all known and unknown construction defects." Belasco expressly waived "all rights under section 1542 of the Civil Code of California," and acknowledged that "in making this release and agreement it is understood and agreed that I rely wholly upon my judgment, belief, and knowledge of the nature, extent, and duration of said damages, and that I have not been influenced to any extent whatsoever in making this Release of All Claims by any representations or statements regarding said injuries, or regarding any other matters, made by any of the RELEASEES, or by any person or persons representing any of the RELEASEES, or by any physician or surgeon employed by any of the RELEASEES."

14

A release and section 1542 waiver is enforceable under these circumstances. (*Salehi v. Surfside III Condominium Owners' Assn.* (2011) 200 Cal.App.4th 1146, 1160 (*Salehi*); *San Diego Hospice*, *supra*, 31 Cal.App.4th at p. 1053; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1173.)  "In the absence of evidence to the contrary, we presume that counsel explained to Salehi 'the import of the release in general and of the waiver of section 1542 in particular.' (*Winet v. Price, supra,* 4 Cal.App.4th at p. 1168.)" (*Salehi*, *supra*, at p. 1160.)  Because Belasco is "an attorney in [his] own right, [he] should have understood the import of the section 1542 waiver." (*Ibid.*)

Belasco's argument ignores his right to reject the terms of the agreement and proceed under the provisions of the Act.  (§ 929, subd. (a).)  When a cash offer is rejected by the homeowner, he may "proceed with the filing of an action" and "the standards of the other chapters of this title shall continue to apply to the action." (*Ibid.*)  We agree with the trial court that Belasco and Wells agreed to a reasonable settlement with explicit terms negotiated between two parties, both represented by counsel.


**Purported Vagueness of the 2006 Agreement**


Belasco argues the 2006 release and section 1524 waiver are too vague to bar Belasco's claim 2012 claim regarding the roof.  The argument is devoid of merit, because the language of the 2006 agreement could not have been more clear.  It left no doubt that Belasco's acceptance of $25,000 was in return for his release and waiver of all claims of construction defect, known or unknown.  "[A] general release can be completely enforceable and act as a complete bar to all claims (known or unknown at the time of the release) despite protestations by one of the parties that he did not intend to release certain types of claims.  (*Winet v. Price*[*, supra,*] 4 Cal.App.4th [at p.] 1173.)" (*San Diego Hospice*, *supra*, 31 Cal.App.4th at p. 1053.)

Belasco argues that the 2006 agreement does not apply to his 2012 claim for defective roof because that potential defect was not specifically mentioned in the prior

agreement. This contention amounts to nothing more than an assertion that section 1542 waivers of unknown claims are invalid. As set forth in the above-cited authorities, this type of waiver is enforceable.

**Subsequently Discovered Claims Permitted by Civil Code Section 932**

Belasco argues that section 932 specifically authorized him to bring his subsequent claim regarding the alleged defect in the roof in a separate action after the 2006 settlement. The introductory sentence of section 932 provides that "[s]ubsequently discovered claims of unmet standards shall be administered separately under this chapter, unless otherwise agreed to by the parties." Had Belasco not entered into the 2006 settlement containing a release and section 1524 waiver, his 2006 claim would not bar his 2012 action for alleged roof defects. But section 932 must be read in conjunction with the express language of section 929 approving a reasonable release in return for a cash settlement. Belasco availed himself of the statutory remedy of a cash settlement under section 929 with his express agreement that he would not bring any future claims regarding known or unknown defects. Belasco's argument would render meaningless the bulk of the terms of the 2006 settlement expressly agreed to by the parties. Section 929, not section 932, controls in this situation, and the 2006 settlement bars all subsequent actions.

**Violation of Public Policy**

Belasco next argues that public policy prohibits a general release and section 1524 waiver as to subsequently discovered latent defects. Belasco reasons that allowing a release and section 1524 waiver allows a builder, such as Wells, to circumvent the purpose of the Act, which is to protect purchasers of new single family residences from patent and latent defects. The point does not require extended discussion. Section 929

16

specifically allows the parties to negotiate a reasonable settlement in return for a cash payment. Having specifically provided for negotiation of reasonable settlements in the context of cash payments, as opposed to the prohibition against releases in the context of repairs to settle a claim under the Act, it is apparent that there is no state policy that would prohibit a release and section 1524 waiver.

We again emphasize that Belasco was under no compulsion in 2006 to enter into the broadly worded release and section 1524 waiver. As the trial court pointed out in its ruling granting summary judgment, Belasco and his attorney could have rejected the agreement to the extent it included a waiver of unknown claims, and their failure to do so in the face of express language referencing section 1542 establishes Belasco's willful acceptance of the waiver. (*Jefferson v. California Dept. of Youth Authority* (2002) 28 Cal.4th 299, 306-307.)

**Disputed Evidence of Fraud/Negligence**

Belasco's final argument is that there is a disputed issue of material fact regarding whether Wells committed fraud by submitting permit information to Manhattan Beach he knew to be false and by failing to disclose to Belasco that the roof was not installed by a roofing contractor, but instead was built "in-house" by Wells. Although couched in terms of fraud and negligence, Belasco makes no specific argument on the negligence theory, which we deem abandoned. As to fraud, the record contains no evidence of a misrepresentation by Wells at any time to Belasco as to who installed the roof, nor is there evidence of reliance by Belasco on a misrepresentation as to that fact.

"'The necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1108; see *Seeger v. Odell* (1941) 18 Cal.2d 409,

17

414; § 1709.)" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, fn. omitted.)

"We 'independently construe the writing to determine whether the release encompasses the present claim[s]' for negligent misrepresentation and fraud. (*Winet v. Price, supra,* 4 Cal.App.4th at p. 1166.)" (*Salehi, supra*, 200 Cal.App.4th at p. 1159.) "A party seeking rescission based on fraudulent nondisclosure must show (1) the defendant failed to disclose a material fact which he knew or believed to be true; and (2) the defendant had a duty to disclose that fact. (*Welch v. State of California* (1983) 139 Cal.App.3d 546, 556.) The duty to disclose arises when two elements are present: (1) the material fact is known to (or accessible only to) the defendant; and (2) *the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact.* [Fn. omitted] (*Reed v. King* (1983) 145 Cal.App.3d 261, 265; *Karoutas v. HomeFed Bank* (1991) 232 Cal.App.3d 767, 771.) [¶] Since the second prong giving rise to an affirmative obligation to disclose rests on the defendant's knowledge of significant facts the plaintiff needs but does not have, we conclude the duty cannot arise when, as here, such significant facts are not *actually* known to the defendant." (*San Diego Hospice*, *supra*, 31 Cal.App.4th at p. 1055.)

Belasco presented no evidence of a misrepresentation made to him by Wells. Wells never represented the names of subcontractors to Belasco. We agree with the trial court that the name of the roofing contractor on the permit is not a material issue, because Belasco does not suggest he purchased the residence in reliance on the information in the permit.

Belasco also did not establish the element of scienter. The record contains no evidence that Wells knew at the time of sale or in 2006 that the roof was defective.

Finally, Belasco has not presented evidence that he bought the house in reliance on a false representation that a roofing contractor had installed the roof. Belasco specifically admitted his decision to enter into the 2006 settlement was a product of his own judgment and not influenced by any statement by Wells: "[I]t is understood and agreed that I rely

18

wholly upon my judgment, belief, and knowledge of the nature, extent, and duration of said damages, and that I have not been influenced to any extent whatsoever in making this Release of All Claims by any representations or statements regarding said injuries, or regarding any other matters, made by any of the RELEASEES, or by any person or persons representing any of the RELEASEES, or by any physician or surgeon employed by any of the RELEASEES."

Belasco's claim of fraud in connection with the 2006 release and section 1542 waiver was properly rejected by the trial court.

**Resolution of the Appeal as to Hatch**

Hatch, representing himself, filed an answer to the complaint. He did not join in the motion for summary judgment filed by Wells and American Contractors. The judgment makes no reference to Hatch. However, the notice of appeal was served by Belasco on Hatch.

Belasco made no argument in his briefs on appeal regarding Hatch. Hatch filed a respondent's brief on appeal, essentially joining in the arguments of Wells and American Contractors. This court requested the parties to address whether Hatch was a party to the appeal, and if not, whether the appeal should be dismissed as to Hatch and whether he should be awarded costs on appeal.

In response to our request, counsel for Belasco wrote that because Hatch was not a party to the summary judgment motion, "Appellant did not believe it was necessary to include Mr. Hatch as a respondent in this appeal. . . ." Counsel's letter further stated, "Mr. Hatch immersed himself in this appeal by filing his respondent's brief" and if the court dismisses the appeal as to Hatch, costs should not be awarded.

Our review of the record reveals a different explanation for how Hatch became "immersed" in this appeal. Belasco served Hatch with the notice of appeal. More

19

importantly, Belasco filed a civil case information statement on appeal[6] identifying Hatch as a party "who will participate in the appeal." Belasco's briefs on appeal were served on Hatch. The clerk of this court served orders and notices on Hatch in reliance on Belasco's representation that Hatch is a party to the appeal. Belasco has treated Hatch as a respondent on appeal. We conclude that Hatch participated in this appeal in direct response to actions taken by Belasco.

The appeal is dismissed as to Hatch, who is entitled to costs on appeal.

## DISPOSITION

The judgment is affirmed as to Wells and American Contractors. The appeal is dismissed as to Hatch. Costs on appeal are awarded to Wells, American Contractors, and Hatch.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.                    GOODMAN, J. [*]

---

[6] We take judicial notice of Belasco's civil case information statement on appeal. (Evid. Code, §§ 452, subd. (d), 459, subds. (a) & (c).)

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20