Filed 10/16/23 Aguila v. Pico Rivera First Mortgage Investors CA6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| HENRY AGUILA,<br><br>　　Plaintiff and Appellant,<br><br>v.<br><br>PICO RIVERA FIRST MORTGAGE INVESTORS, LP et al.,<br><br>　　Defendants and Respondents. | 2d Civ. No. B323391<br>(Super. Ct. No. 22CV00464)<br>(Santa Barbara County) |

　　This is an appeal from the grant of a special motion to strike pursuant to Code of Civil Procedure section 425.16[1] (anti-SLAPP [strategic lawsuit against public participation] motion).

　　An underlying action arose from a foreclosure by defendant Pico Rivera First Mortgage Investors, LP (First Mortgage) on property owned by plaintiff Henry Aguila. That action ended with a settlement. In the instant action, Aguila's complaint

---

　　[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

alleges defendants First Mortgage, and others, breached a release and covenant not to sue in the settlement agreement by making a motion in a bankruptcy proceeding. The bankruptcy proceeding is not related to the causes of action settled by agreement in the underlying lawsuit. Moreover, the damages alleged in the complaint arose from the claimed loss of a 50-year lease that Aguila granted to himself years after he lost the property to First Mortgage's foreclosure. First Mortgage responded to the complaint with an anti-SLAPP motion. The trial court granted the motion. Aguila's appeal, like his complaint, is an exercise in delusional thinking. We affirm.

**FACTS**

Thee Aguila, Inc. (TAI) owned real property in Pico Rivera, California (the Pico Rivera property). Aguila is the sole owner of TAI. The Pico Rivera property had been leased for use as a nightclub and restaurant. In 2015, the Drug Enforcement Agency seized the liquor license because the tenant was using the Pico Rivera property to launder money for a Mexican drug cartel. The business's conditional use permit (CUP) was revoked and the business was shut down. The Department of Alcoholic Beverage Control refused to issue a new liquor license until the city issued a new CUP. Aguila began work to obtain a new CUP.

*Loan and Foreclosure*

In July 2015, TAI obtained a loan of $5.7 million from First Mortgage. The loan was secured by a trust deed that encumbered the Pico Rivera property. Aguila personally guaranteed the loan in writing.

Guinevere Malley is an attorney who represented TAI and Aguila from time to time on various matters. In May 2017, Aguila, as president of TAI, executed a note for $2 million made

2

payable to Malley.  The note was secured by a trust deed (Malley trust deed) that also encumbered the Pico Rivera property.  The Malley trust deed was made returnable to TAI, not Malley, after it was recorded.  Aguila claimed that the note was to compensate Malley for past legal services and legal services to be rendered in the future.  At the time the note and Malley trust deed were made, Malley was in bankruptcy proceedings under Chapter 13 of the Bankruptcy Code.  (11 U.S.C. § 1301 et seq.)

TAI failed to make payments on the First Mortgage loan, and First Mortgage began foreclosure proceedings in August 2017.  Aguila obtained a new liquor license on December 4, 2017.

On December 6, 2017, a non-judicial foreclosure sale was conducted, and First Mortgage became the Pico Rivera property's owner.  Aguila attended the sale, but did not mention Malley's bankruptcy, although he was aware of the bankruptcy at the time.

*Underlying Litigation*

In October 2018, First Mortgage filed an action against Aguila for breach of his personal guarantee of the loan.  Aguila, a former attorney, answered and filed a cross-complaint against First Mortgage, its principal Carl Lindros, and numerous others.  The cross-complaint was based on an alleged oral contract between First Mortgage and Aguila to allow Aguila a reasonable time period to fulfill his financial obligations, arrange for the sale of the Pico Rivera property, and keep the net proceeds.  Malley represented TAI in portions of the underlying litigation.

*Aguila Claims First Mortgage's Foreclosure is Void*

In February 2020, the parties settled the lawsuit, but Aguila initially refused to enter into a formal settlement agreement.  As the parties were attempting to finalize the

agreement, Aguila suggested that First Mortgage's foreclosure on the Pico Rivera property may have been invalid. Aguila posited that the foreclosure violated the automatic stay in Malley's bankruptcy because the foreclosure extinguished the Malley trust deed. The Malley trust deed had not been listed on any schedule in her bankruptcy, no accounts receivable were listed, and First Mortgage had no notice of Malley's bankruptcy.

Aguila claimed in a declaration that on June 1, 2020, years after the foreclosure sale, he entered into a lease with TAI giving him the right to possession of the Pico Rivera property for 50 years.

*Motion for Retroactive Relief*

In October 2020, First Mortgage filed a motion in bankruptcy court for retroactive annulment of the bankruptcy stay. The annulment would retroactively validate the foreclosure of the First Mortgage trust deed encumbering the Pico Rivera property. The motion was based on First Mortgage's lack of notice of Malley's bankruptcy. First Mortgage had sent notice of the foreclosure to Malley as the junior lienholder, but she did not advise First Mortgage of the bankruptcy or raise an objection to the foreclosure. In addition, there was no evidence of any consideration given for the note. Aguila claimed that the note was for attorney fees owed but the bankruptcy schedules reflected no such receivables. It was unclear whether Malley even knew the note and Malley trust deed existed at the time the trust deed was recorded.

*Settlement Agreement*

In November 2020, while First Mortgage's bankruptcy court motion was pending, the parties executed a formal settlement agreement regarding the underlying action. Under

the agreement, a judgment would be entered against Aguila in the amount of $3,867,113.84. The complaint and cross-complaint would be dismissed.

The settlement agreement also contained mutual releases and covenants not to sue as follows:

"*General Release of Known and Unknown Claims.* [¶] . . . With the exception of the obligations imposed under this Agreement, [First Mortgage], Mortgage Co. of Santa Barbara, Inc., . . . and Henry Aquila, [TAI], . . . individually and collectively, for themselves and their respective officers, . . . hereby mutually release each other, individually and collectively, and each other's respective officers, . . . attorneys, . . . , from any and all claims, causes of action, rights, obligations, debts, liabilities, accounts, liens, damages, losses and expenses of any kind and nature whatsoever, whether known or unknown [¶] . . . [¶]

"*Covenant Not to Sue.* [¶] The Mortgage Parties and the Aguila Parties, individually and collectively, for themselves and their respective officers, . . . attorneys, . . . agree that they will not make, assert or maintain against the other or the other's respective officers, . . . attorneys, . . . any claim, demand, action, suit or proceeding arising out of or in connection with the matters respectively released herein." (Italics added.)

*Motion for Retroactive Relief Resumed*

After the parties executed the settlement agreement, First Mortgage resumed its motion to retroactively annul the stay in Malley's bankruptcy. Aguila, TAI, and Malley did not object. The bankruptcy court granted the motion, finding that Malley's bankruptcy petition was part of a scheme to hinder, delay, or

5

defraud creditors.  The court ruled that First Mortgage's foreclosure did not violate the automatic stay.

In December 2020, TAI moved for reconsideration.  In support of TAI's motion, Malley declared that she was aware of the execution of the note and Malley trust deed at around the time Aguila created them but had not received any payments under the note.

The bankruptcy court denied TAI's motion on the ground that TAI lacked standing because it had no interest in the bankruptcy estate that would benefit if the annulment order were reversed.  The court also found that even if TAI had standing, it failed to show that the court erred in granting First Mortgage's annulment motion.  TAI also failed to show that First Mortgage had notice of Malley's bankruptcy.  Finally, the court found that Aguila's testimony was not credible.

TAI appealed the denial of its motion for reconsideration to the bankruptcy panel of the Ninth Circuit Court of Appeals.  The Ninth Circuit concluded TAI had no standing because, among other reasons, TAI is a nonparty to the bankruptcy that sought to use the debtor's automatic stay as a shield against the foreclosure of the Pico Rivera property.

*Instant Action*

In March 2021, Aguila brought the instant action against First Mortgage, Mortgage Co. of Santa Barbara, Inc., and Andrew Fuller (hereafter collectively First Mortgage), in propria persona.[2]

---

[2] Mortgage Co. of Santa Barbara, Inc. is the general partner of First Mortgage.  Andrew Fuller is the president and chief executive officer of Mortgage Co. of Santa Barbara, and executor of the estate of Carl Lindros, a principal in First Mortgage, who died in 2019.

6

The gravamen of the complaint is that First Mortgage breached the covenant not to sue in the settlement agreement by its motion for retroactive annulment of the bankruptcy stay in Malley's bankruptcy. Aguila's theory of liability is that the covenant not to sue in the settlement agreement covered officers and attorneys of the parties, and Malley was an officer and attorney of TAI. The complaint stated causes of action for breach of contract, breach of the covenant of good faith and fair dealing, interference with prospective economic advantage based on the termination of Aguila's 50-year lease, and intentional infliction of emotional distress.

*Anti-SLAPP Motion*

First Mortgage responded to the complaint with an anti-SLAPP motion. First Mortgage alleged that Aguila's action arose from the exercise of his right to petition under the United States and California Constitutions. First Mortgage also alleged that Aguila cannot demonstrate that he has a reasonable probability of prevailing. Malley's bankruptcy is unrelated to any cause of action encompassed by the settlement agreement.

*Opposition*

Aguila submitted an affidavit in opposition to the motion. Aguila declared in part: "In negotiating and executing the Settlement Agreement, which included my stipulation to have a $3,867,113.84 judgment entered against me personally, it was vitally important to me to have the release provisions of Section 2 and the covenant not to sue provisions of Section 3 included therein, as written, because, as a former attorney, I was mindful and knowledgeable that the purported 2017 non-judicial foreclosure sale of the [Pico Rivera] Property by Defendant [First Mortgage] was void because it violated the automatic stay

7

provisions of the Bankruptcy Code, which was automatically instituted when Ms. Malley filed for Chapter 13 bankruptcy in 2015 and remained in place through the 2017 purported trustee's sale and through the date of the execution of the Settlement Agreement. I was aware that the Settlement Agreement provisions, as written, would prohibit Defendants from maintaining their motion for retroactive relief from bankruptcy stay that they had filed in the bankruptcy case of Ms. Malley on November 10, 2020 in order to attempt to retroactively validate the sale."

Malley also resubmitted an affidavit in opposition to the motion. She declared that: she was employed as legal counsel for TAI and had been an officer of TAI; TAI owed her a substantial amount of fees at the time of the foreclosure sale and still owes her a substantial amount of fees; she was aware of the note and Malley trust deed "around the time they were undertaken"; TAI has not made any payments under the note and still owes her $2 million; and her bankruptcy was filed in good faith to cure arrears in secured debt on a property in Downey, property distinct from the Pico Rivera property, which was subject to foreclosure.

Aguila submitted a supplemental affidavit in which he recounted his claim of an oral agreement with First Mortgage. According to Aguila, First Mortgage orally agreed to give him at least 12 months after First Mortgage obtained title to the Pico Rivera property by foreclosure to either cure the debt or find a buyer. Aguila attached a copy of his deposition given prior to the execution of the settlement agreement in which he claimed to be the present owner of the Pico Rivera property because the

8

foreclosure sale is void due to the violation of the automatic stay in Malley's bankruptcy.

*Ruling*

The trial court granted First Mortgage's anti-SLAPP motion. In its statement of decision the court summarized Aguila's plan: "Aguila apparently believed he could either (a) ultimately unwind the foreclosure sale because it had been conducted in violation of Malley's bankruptcy stay, reacquire the [Pico Rivera] property, and operate it as a nightclub for the 50-year lease term, or, alternatively (b) permit [First Mortgage] to obtain retroactive relief from the stay, thereby validating the nonjudicial foreclosure sale, and thereafter sue [First Mortgage] for everything he believed he had lost in not being able to unwind the foreclosure sale and reacquire the [Pico Rivera] property."

The trial court concluded that Aguila failed to show a reasonable probability of prevailing. In making the settlement agreement, the parties did not mutually intend the release and covenant not to sue clauses to encompass the motion in Malley's bankruptcy. The evidence shows only Aguila's unilateral undisclosed intention. In addition, the court concluded that Aguila cannot show damages because he has no standing to challenge the bankruptcy court's order approving the foreclosure.[3]

## DISCUSSION

### I. Anti-SLAPP Motion

Section 425.16, subdivision (b)(1), the anti-SLAPP statute, provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the

---

[3] Aguila was declared a vexatious litigant on July 5, 2023.

9

California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

To resolve an anti-SLAPP motion, the trial court engages in a two-step inquiry. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from a protected activity. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 71.) The moving party has the burden of showing that the challenged cause of action arises from a protected activity. (*Ibid.*) Second, if the moving party has carried that burden, the court must decide whether the opposing party has demonstrated a probability of prevailing on the challenged cause of action. (*Ibid.*) In reviewing the opposing party's evidence, the court does not weigh it; instead, the court determines whether the opposing party has made a prima facia showing of facts necessary to establish its claim. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 673.) "The trial court's ruling on both issues are reviewed de novo." (*City of Santa Monica*, at p. 71.)

*II. Protected Activity*

Section 425.16, subdivision (e), provides that a protected activity includes "any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law." First Mortgage's motion in bankruptcy court qualifies as a protected activity. (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [conduct such as filing, funding, and prosecution of a civil action is litigation activity protected for purpose of anti-SLAPP motion].)

10

*III. Probability of Prevailing*
(a) Contract Cause of Action

The release and covenant not to sue clauses in the settlement agreement are very similar to standard clauses of their type. The question here is whether they encompass First Mortgage's motion in Malley's bankruptcy case. The answer is no.

Aguila relies on the broad language of the release in the settlement agreement covering claims "of any kind and nature whatsoever, whether known or unknown." But the broad language in a settlement agreement is not by itself determinative of its scope.

A settlement agreement may be explained by reference to the circumstances under which it was made, and the matter to which it relates. (*Olson v. Doe* (2022) 12 Cal.5th 669, 682.) However broad the terms of the agreement may be, it extends only to those things concerning which it appears the parties intended to contract. (*Ibid.* [clause in which parties agreed not to disparage each other interpreted not to apply to lawsuit brought by one of the parties against the other].)

Here the settlement agreement was made to settle a number of cases relating to an alleged oral agreement to allow TAI at least 12 months after First Mortgage's foreclosure on the Pico Rivera property to either cure the debt or find a buyer. The settlement had nothing to do with Malley's bankruptcy. Malley declared she filed for bankruptcy to cure arrears in debts secured by her property in Downey. The matters to which the settlement relates are the cases being settled therein. It would be absurd to interpret the settlement agreement as encompassing an

11

unrelated bankruptcy proceeding concerning a property in Downey.

Moreover, Aguila's interpretation of the settlement agreement is based on deception. Aguila manufactured a note and trust deed in favor of Malley. Nowhere is that asset reflected in Malley's bankruptcy filings. Although Aguila attended the foreclosure sale and Malley had notice, neither advised First Mortgage of Malley's bankruptcy prior to the foreclosure. The only reasonable conclusion is that Aguila intentionally created the circumstance that allowed him to claim the foreclosure – although conducted by First Mortgage in good faith – was void. Aguila then, by his own admission, entered into the settlement agreement with the undisclosed intention of holding First Mortgage liable if it attempted to remedy the problem that Aguila himself maliciously created.

Aguila now wants us to interpret the settlement agreement in ways that assist his bad faith. We decline to do so. According to Aguila, the settlement agreement leaves First Mortgage either with a void deed or liable to Aguila for breach of the settlement agreement. No reasonable person in First Mortgage's position would intend to enter into such an agreement. In light of all the circumstances, Aguila's interpretation of the settlement agreement is quite simply bizarre.

Aguila's reliance on *Belasco v. Wells* (2015) 234 Cal.App.4th 409 (*Belasco*) is misplaced. There plaintiff purchased a newly constructed home directly from the builder. Thereafter plaintiff complained of construction defects. In 2006, the parties entered into a written settlement agreement in which plaintiff agreed to release all known and unknown construction defects in the home in exchange for $25,000. In 2012, plaintiff brought an action

12

against the builder alleging defects in the home's roof. The trial court granted the builder summary judgment based on the 2006 settlement agreement which contained the release of known and unknown claims. In affirming the judgment, the Court of Appeal rejected the plaintiff's contention that the 2006 settlement agreement does not include a defective roof because that defect was not specifically mentioned in the agreement. The court held that waivers of unknown claims are enforceable. (*Id*. at p. 423.)

In *Belasco*, *supra*, 234 Cal.App.4th 409, the settlement agreement released claims for unknown construction defects in a particular house. Plaintiff's claim was for an unknown construction defect in that particular house. *Belasco* is easily distinguishable. The defendant in *Belasco* did not claim construction defects in a particular house also encompassed a motion in an unrelated bankruptcy. Nor were there any facts in *Belasco* showing that the release in the settlement agreement was the product of deception and bad faith.

Aguila claims that in determining that he failed to show a probability of prevailing, the trial court improperly weighed the evidence. But the evidence leads to only one reasonable conclusion: Aguila has no possibility of prevailing; there is no need to weigh the evidence.

Moreover, Aguila's entire claim for damages is based on the theory that he has standing to assert the automatic stay in Malley's bankruptcy. Both the bankruptcy court and the Ninth Circuit bankruptcy panel concluded that Aguila had no such standing. Aguila claims without citation to authority that he could succeed in a quiet title action in superior court. The claim is pure fantasy. Quite apart from the problem of res judicata, no superior court would conclude Aguila has standing in the face of

13

the bankruptcy court and the Ninth Circuit bankruptcy panel's determination.

(b) Remaining Causes of Action

Aguila's cause of action against First Mortgage for breach of the covenant of good faith and fair dealing demonstrates that irony is not dead. Although there is no evidence of bad faith on the part of First Mortgage, there is overwhelming evidence of bad faith on Aguila's part. In any event, a cause of action for breach of the covenant of good faith and fair dealing requires a showing of breach of contract. (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1344.) Here there was no breach of contract.

Aguila's cause of action for loss of prospective economic advantage is based on the 50-year lease he granted to himself long after First Mortgage foreclosed on the Pico Rivera property. Aguila can derive from the lease no economic advantage because the bankruptcy court retroactively approved the foreclosure. The bankruptcy court and the Ninth Circuit bankruptcy panel ruled that Aguila has no standing to challenge the approval. Aguila's assertion that he could prevail in a superior court action to quiet title in spite of the bankruptcy court's and the Ninth Circuit bankruptcy panel's rulings is baseless.

Finally, Aguila's cause of action for intentional infliction of emotional distress is also based on the loss of his 50-year lease. The cause of action requires a showing that the defendant's conduct was so outrageous as to exceed all bounds of decency. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.) Aguila has failed to show First Mortgage did anything wrong.

14

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondents.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

15

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

The Tym Firm and Ronald D. Tym for Plaintiff and Appellant.

Law Office of Eric A. Woosley and Eric A. Woosley for Defendants and Respondents Pico Rivera First Mortgage Investors, LP and Mortgage Co. of Santa Barbara, Inc.

Reicker, Pfau, Pyle & Mcroy and Robert B. Forouzandeh for Defendant and Respondent Andrew Fuller.