Filed 7/23/25  Liu v. Xiang CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MENGYUAN LIU, | |
| Plaintiff and Appellant, | G064182 |
| v. | (Super. Ct. No. 30-2022-01250906 |
| LIN YUN XIANG et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Erick L. Larsh, Judge. Reversed in part, affirmed in part.

Guodi Sun & Associates and Guodi Sun for Plaintiff and Appellant.

Chang & Lee and Grace Lea Chang for Defendants and Respondents.

\*          \*          \*

Plaintiff Mengyuan Liu invested $250,000 in a limited liability company formed to manage a new restaurant. Plaintiff sued several individual defendants (Lin Yun Xiang, Robert Luo, Jin Luo, and Emilie Lee), as well as an entity defendant, Element Catering Group, LLC (Element), on a variety of tort and contract theories of recovery. The trial court sustained defendants' demurrer to the third amended complaint without leave to amend. Plaintiff timely appealed from the ensuing judgment of dismissal.

We reverse the judgment as to four of the five defendants. The heart of plaintiff's claim is that defendants took her money then refused to honor her contractual rights under the operating agreement and instead engaged in self-dealing transactions to divert resources away from the restaurant. The operative complaint includes several viable causes of action and leave to amend should be provided to pursue related theories of recovery. (See *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865, 870 (*City of Dinuba*).)

## FACTS[1]

In early 2017, Xiang met with plaintiff and touted the "Poki Cat" restaurant business. Xiang characterized "poke" as part of a new health food

---

[1] We accept as true all facts "properly pleaded" in the operative complaint. (*City of Dinuba, supra*, 41 Cal.4th at p. 865.) We do not credit mere "contentions, deductions or conclusions of law." (*Ibid*.) "Additionally, to the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits." (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.)

trend with the potential for explosive growth.[2] Xiang indicated profits of up to $1.2 million monthly could be derived from a Poki Cat investment.

Xiang promoted an investment opportunity for plaintiff in a restaurant sited in Pasadena. The investment pitch was that "an investor would contribute a couple of hundred thousand dollars and obtain 51 [percent] of the shares [of a particular entity running one restaurant] and Element [would] contribute one thousand dollars plus its management skill and experience and obtain 49 [percent] of the shares; after opening [100] Poki Cat restaurants, each investor would be asked to give 2 [percent] of his/her shares to Element and thus make Element the parent company with over one hundred subsidiaries; and, then, Element would apply for being listed on the U.S. stock market. If successful, all current investors would obtain original shares of Element and become rich."

Xiang also provided plaintiff with social media references to Poki Cat, promotional brochures, and "similar information." Other defendants supplied additional information.

Plaintiff, who lacked experience in the business world, decided to invest $250,000. She signed an agreement in November 2017 to invest in the entity that would operate the Pasadena restaurant and deposited the funds shortly thereafter. But in June 2018, plaintiff was told that the Pasadena restaurant idea had been abandoned and that she should instead invest in a different company that would operate a Mission Viejo location.

---

[2] We take judicial notice that "poke" refers to a popular dish with raw seafood inspired by Hawaiian cuisine.

3

Poki Cat Innovations, LLC (the Company), was organized by way of a filing with the California Secretary of State in August 2017. It was created as the entity that would own and operate the Mission Viejo restaurant. An initial investor, Jinsong Cao, backed out. Plaintiff "heard" about Cao's exit.

In August 2018, plaintiff and Element entered into an operating agreement for the Company. Individual defendants Jin Luo and Emilie Lee signed on behalf of Element. The agreement provided that plaintiff would invest the funds remaining from the initial $250,000 (i.e., $248,697.50) and Element would invest $1,000. Both capital contributions were due in September 2018.

The company had only two members, plaintiff and Element. As of August 2018, plaintiff owned 51 percent of the Company and Element owned 49 percent.

The operating agreement addressed other important points. In general, profits and losses would be allocated to the members by the percentage ownership interest. At meetings of the membership to govern the company, members "shall Vote in proportion to the Member's Percentage Interest . . . ." Section 5.4 of the agreement required a majority of members to "consent[]" to specified actions, such as disposition of a substantial amount of the company's assets or the incurring of a contractual obligation in excess of $5,000. "Members [had] the right and power to appoint, remove, and replace Managers of the Company . . . ."

But the agreement identified plaintiff, Jin Luo, and Emilie Lee as the three managers of the Company. Decisions concerning day to day management would be made by a majority of the managers. The complaint alleges plaintiff was stripped of any control because defendants had two of

4

the three votes as managers and they excluded plaintiff from all decisions. Then, on May 6, 2021, defendants unilaterally reduced plaintiff's ownership share to 42.18 percent after plaintiff refused to accede to defendants' demand that plaintiff contribute additional capital ($43,000).

There was only one Poki Cat restaurant in 2017 when Xiang sold a vision of success to plaintiff. No more than seven were opened in the years after. None made money. "Poke might be a good healthy food, but the Poki Cat's business model had not been tested before; there was not any indication that it represents a new trend, potent enough to trigger a 'revolution' in fast food industry. Moreover, the management team was a typical 'mom and pop shop.' Worse still, the Poki Cat's investment model that . . . Element provides merely one thousand dollars portends undercapitalized restaurants continuously hungering for cash."

Plaintiff alleges a variety of wrongdoing by defendants: (1) Element never paid its $1,000 capital contribution to the Company; (2) plaintiff was never invited to a managers' meeting and defendants made decisions without consulting plaintiff; (3) substantial obligations were taken on and payments were made without a meeting of members and the approval of plaintiff, including a payment of $101,941.11 to former investor Cao to settle a dispute and $6,305 paid to an attorney for services rendered to defendants in this action; (4) the defendants used Element to supply the Poki Cat restaurants and charged excessive fees in these self-dealing arrangements; (5) defendants diverted payments rightly owed to the Company to Element or other entities (running restaurants at other locations); (6) defendants wrongly reduced plaintiff's ownership share to 42.18 percent  on the grounds that she would not comply with an unreasonable demand for more money; and (7) defendants refused to provide

5

information about the restaurant and its operations, and plaintiff had been locked out completely since 2022.

The operative complaint is vague with regard to the current status of the restaurant, e.g., whether it still operates. The prayer for relief seeks the return of plaintiff's investment or an award of damages, as well as any other appropriate remedies.

## ANALYSIS

Our review is de novo with regard to whether the third amended complaint states a cause of action. (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 173.) We read the complaint as a whole, interpret it reasonably, and determine whether it states a cause of action under any possible legal theory. (*Tran v. Nguyen* (2023) 97 Cal.App.5th 523, 528.) Plaintiff's opening brief asserts there are five valid causes of action.

### I.

### PROMISSORY FRAUD

First, the complaint alleges promissory fraud against Xiang, who sold plaintiff on the future of Poki Cat restaurants. Fraud requires: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. (*Belasco v. Wells* (2015) 234 Cal.App.4th 409, 424.)

"[I]n a promissory fraud action, to sufficiently allege[] defendant made a misrepresentation, the complaint must allege (1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false." (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.)

6

"Fraud must be pleaded with particularity. General and conclusory allegations are inadequate." (*Lauckhart v. El Macero Homeowners Assn.* (2023) 92 Cal.App.5th 889, 903.)

Incorporating and building on the general allegations detailed above, a few more facts alleged are worth stating here, such as Xiang's statement that "Element had 25 years of successful experience in the fast food industry." Xiang "predicted that there would be 20 Poki Cat restaurants in California in 2018 and 120 throughout the United States in 2019, and the Poki Cat chain would be listed on the U.S. stock market in 2019; if successful, all investors would obtain original shares of the parent company and bec[o]me rich." Xiang "even posted a made-up photo, in which Donald Trump was shown to inscribe his thanks to Mr. Xiang" for the contributions made by Element and Poki Cat.

Statements about Element were supposedly false because it was a new entity, though it is unclear as to whether the statement about 25 years of experience referred to the entity itself or its individual human agents. Promises about future success were "not realistic" and Xiang did not intend to meet these "promises" at the time he made them. Plaintiff relied on Xiang's "promises" and invested $250,000 as a result. The promises were not met in that: (1) the restaurant plaintiff invested in lost money; and (2) only eight Poki Cat restaurants opened, all of which lost money.

The trial court sustained the demurrer due to the lack of specificity in plaintiff's pleading. We disagree with the rationale stated in the court's order.[3] Nevertheless, we agree plaintiff failed to plead a fraud cause of

---

[3] The court indicated the complaint did not identify when the "representations" were made and by whom. But read liberally, the complaint accuses Xiang (and Xiang only) of fraud. Read liberally, the complaint alleges

7

action with sufficient particularity. Plaintiff claims to have reasonably relied on promises of future action, i.e., the rapid expansion of a Poki Cat chain of restaurants that would be reorganized and publicly listed as a quick route to wealth for all early investors. Plaintiff does not identify specific actions Xiang promised to take in the future that he failed to perform. Plaintiff claims she was shown "promotional brochures with the same or similar information," but she does not quote these materials.

The allegations of the complaint are in the nature of nonactionable opinions or predictions about future events. (See *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 606–607 [appraiser's statements about value of real property were nonactionable opinions and predictions]; *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469 ["predictions regarding future events are deemed to be mere opinions which are not actionable"].) Xiang expressed a vision of spectacular future success in the notoriously competitive restaurant industry. Xiang allegedly communicated specific targets to plaintiff. But neither failure nor unrealistic speculation amounts to common law fraud. And plaintiff does not purport to plead a cause of action for misrepresentation of existing facts or allege she reasonably relied on misrepresentations of existing fact (such as Element's experience or whether Donald Trump really acknowledged any of the defendants).

---

Xiang's statements were made in early 2017 and before plaintiff invested her money in November 2017. We disagree with the court's ruling to the extent it was based on a failure to state more clearly in particular paragraphs or sentences that it was Xiang making misrepresentations and precisely when he made those representations.

## II.

### CONSTRUCTIVE FRAUD

Second, the operative complaint alleges constructive fraud as to Xiang only. Constructive fraud requires a confidential or fiduciary relationship between the parties. (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1131.) The operative complaint fails to allege such a relationship between Xiang and plaintiff.

Moreover, plaintiff forfeited the argument that the court erred as to this cause of action. "[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case." (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10.) The opening brief contains two paragraphs addressed to constructive fraud, neither of which cites to legal authority. No reply brief was filed by plaintiff. Plaintiff failed to adequately brief this issue in the opening brief and the issue is deemed forfeited.

## III.

### BREACH OF FIDUCIARY DUTY

Next, plaintiff asserts defendants Element, Jin Luo, Robert Luo, and Emilie Lee breached their fiduciary duties to plaintiff. Element and plaintiff were the only two members of the Company, sharing nearly equal ownership when it was created. Jin Luo and Emilie Lee were two of the three individuals (along with plaintiff) named in the operating agreement as managers of the Company. Robert Luo is a manager of Element and has been acting as a manager of the Company (recall that plaintiff alleges she was not actually included in decision making as a manager despite the language of the operating agreement). All of these individual defendants are alleged to be alter egos of Element.

"The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach." (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1405 (*Mendoza*).)

In circumstances dictated by statute and case law, members and managers of limited liability companies can have fiduciary duties to the company and to other members. (See Corp. Code, § 17704.09; see also *Samuelian v. Life Generations Healthcare, LLC* (2024) 104 Cal.App.5th 331, 361.) Those with majority control of closely held corporations or limited liability companies have a fiduciary duty to treat minority owners equitably rather than taking advantage of their control to benefit themselves unfairly. (*Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 149–150 (*Shrage*).)

The trial court sustained the demurrer to this cause of action on the grounds that defendants had no fiduciary duty to plaintiff because plaintiff was a majority owner of the Company, not a minority owner. This ruling ignores allegations in the complaint that: (1) plaintiff's rightful place in managing the company was ignored by the other managers; (2) Robert Luo usurped plaintiff's rightful position as a manager; and (3) defendants unilaterally reduced plaintiff's ownership share to 42.18 percent, making her a minority owner by the time the complaint in this action was filed. The operative complaint sufficiently alleges duty.

The operative complaint also sufficiently alleges breach of duty and damages. Defendants excluded plaintiff from the management of the company despite the language of the operating agreement. Defendants diverted money from the company's revenues to benefit themselves and their interests. Taking the allegations of the operative complaint to be true, harm

10

was suffered by reason of defendants' conduct. The court erred in sustaining the demurrer to the breach of fiduciary duty cause of action.

A tricky question not addressed by the court or parties is whether this cause of action is one properly classified as an individual claim brought by plaintiff, a derivative claim that should be brought on behalf of the Company by plaintiff, or a mix of both. "An action is derivative if "'the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance of distribution among individual holders . . . .'"'" (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 313.) For example, "Under California law, 'a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth).'" (*Id.* at p. 312.)

At least with regard to some of the factual assertions at issue, plaintiff arguably lacks standing to sue these defendants in her individual capacity. (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108; but see *Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1257–1260 [passive minority shareholder allowed to bring an individual action against the other owners because the traditional purposes of requiring derivative lawsuits do not apply "at all when there is only one minority shareholder"].)

The operative third amended complaint does not purport to be a derivative action (though the second amended complaint did include derivative claim allegations). On remand, should she wish to do so, plaintiff shall have leave to reintroduce derivative claims into a fourth amended complaint.

# IV.

## BREACH OF CONTRACT

The operative complaint also alleges Element, Emilie Lee, Jin Luo, and Robert Luo breached the Company's operating agreement.[4] "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

The operating agreement, attached to the operative complaint, was entered by plaintiff and Element to provide for the governance of the Company. Plaintiff performed her obligations under the contract, including the contribution of nearly $250,000. Jin Luo and Emilie Lee signed the contract on behalf of Element. The complaint alleges that Element is the alter ego of the individual defendants. Element (and the individual defendants) breached the operating agreement by failing to contribute their capital share ($1,000), denying plaintiff her right to participate in company affairs, and incurring contractual expenses in excess of $5,000 without notice to or permission from plaintiff.

The court erred by sustaining the demurrer as to the breach of contract cause of action. Similar to the fiduciary duty analysis above, the only

---

[4] The order sustaining the demurrer as to this cause of action states that "[p]laintiff was not granted leave to amend this cause of action following the last demurrer." But the court's order sustaining a demurrer to the second amended complaint granted 10 days leave to amend without differentiating between causes of action. The record does not support the notion that plaintiff lacked leave to amend the breach of contract action and we therefore will evaluate whether the third amended complaint states a breach of contract cause of action.

12

potential shortcoming of plaintiff's breach of contract cause of action may be uncertainty as to whether the alleged damages are cognizable as having been suffered by plaintiff as an individual. Defendants failed to contribute $1,000 to the Company (not plaintiff personally). Defendants incurred obligations and paid third parties using money owned by the Company (not plaintiff).

Plaintiff shall have leave, should she wish to do so, to amend on remand to include a derivative claim for the breach of contract cause of action on behalf of the Company.

## V.

### CONVERSION

Finally, the operative complaint alleges Element, Emilie Lee, Jin Luo, and Robert Luo converted property belonging to the Company.[5] These defendants accomplished the alleged conversion by self-dealing and diversion of resources.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543–544.)

---

[5] The order sustaining the demurrer as to this cause of action states that "[p]laintiff was not granted leave to amend this cause of action following the last demurrer." But the court's order sustaining a demurrer to the second amended complaint granted 10 days leave to amend without differentiating between causes of action. The record does not support the notion that plaintiff lacked leave to amend the conversion action and we therefore will evaluate whether the third amended complaint states a conversion cause of action.

The trial court focused on the lack of allegations as to a "specific sum [of money] capable of identification" as a necessary component of a conversion cause of action. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452.) True, the operative complaint lacks allegations as to specific amounts of money diverted from the Company, as to alleged self-dealing transactions "channeling quite a sum of money to . . . Element." But it is alleged that a payment of $101,941.11, was made to the prior investor, Cao, in August 2018, and that a $6,305 payment was made to an attorney for legal services rendered to the defendants. The $101,941.11 is referenced in the conversion cause of action as a diversion of money "to settle the account with their prior partner and other individuals for the dealings unknown to Plaintiff."

The court erred in concluding a conversion cause of action was not stated. The causes of action for breach of fiduciary duty or breach of contract might ultimately prove to be a better fit for these factual allegations. But alternative theories of recovery are allowed at this stage of the proceedings. (See, e.g., *Mendoza*, *supra*, 140 Cal.App.4th at pp. 1404–1406 [reversing order sustaining demurrer as to both conversion and breach of fiduciary duty causes of action based on agent not reporting true sales price to principal, but instead secretly keeping the difference between the reported sales price and the true sales price].)

As with breach of fiduciary duty and breach of contract, it is also possible that this cause of action is more suitable as a derivative claim. We therefore grant leave to amend to plaintiff.

14

# VI.

## LEAVE TO AMEND

Finally, plaintiff claims the court erred by declining to grant leave to amend the third amended complaint. We have already indicated leave to amend as to certain causes of action will be provided but include analysis of this issue separately to provide further explanation of our holding.

It is an abuse of discretion to deny leave to amend if "there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) It is the plaintiff's burden to demonstrate how the complaint could be amended to state a cause of action. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) To meet this burden, appellants have a "duty to spell out in [their] brief the specific proposed amendments" that would be made on remand. (See *People ex rel Brown v. Powerex Corp.* (2007) 153 Cal.App.4th 93, 112.)

Plaintiff's opening brief fails to identify any specific amendments that would be made to the third amended complaint if an opportunity to amend were provided. Instead, the opening brief vaguely suggests "additional facts" can be alleged if needed "to cure [any] pleading defects." Plaintiff declined to file a reply brief. Plaintiff waived oral argument. Plaintiff did not provide a record of any oral proceedings at the demurrer hearing (e.g., a reporter's transcript), so there is no indication whether plaintiff offered specific proposed amendments at the hearing. Plaintiff did not seek leave to amend in the written opposition to the demurrer filed in the trial court. We decline to provide leave to amend as to the promissory fraud and constructive fraud causes of action.

15

But in spite of these deficiencies, we hold that leave to amend in this case is appropriate as to the causes of action for conversion, breach of contract, and breach of fiduciary duty.

"In assessing whether plaintiffs should be allowed leave to amend, we determine de novo whether the complaint states facts sufficient to state a cause of action under any possible legal theory. [Citation.] We are not limited to plaintiffs' theory of recovery or "'form of action'" pled in testing the sufficiency of the complaint." (*City of Dinuba, supra,* 41 Cal.4th at p. 870.)

The court's unduly constrained view of pleading requirements occluded a difficult question. Recovery against defendants may be merited under some legal theory if the facts alleged by plaintiff are proven true. But the surviving causes of action fall in the gray area between claims properly brought as individual causes of action and those brought as derivative causes of action. (See *Holistic Supplements, LLC v. Stark* (2021) 61 Cal.App.5th 530, 541–542 [analyzing case in which plaintiff had suffered both derivative and individual injuries]; *Schrage, supra,* 69 Cal.App.5th at p. 149 ["A minority shareholder may bring a cause of action for breach of fiduciary duty against majority shareholders as an individual claim or as a derivative claim, depending on the circumstances"].)

With only two members of the company (plaintiff and Element), it is possible that the circumstances support a solely individual action against Element and the other defendants. Plaintiff may stand on these individual claims on remand. But it is appropriate to allow plaintiff the opportunity to plead in the alternative and allow the proper division between individual and derivative theories to be decided later in the lawsuit once the parties' evidence has been marshalled and their legal theories have been honed.

16

Plaintiff should also be allowed to amend the complaint to include the Company, Poki Cat Innovations, LLC, as a nominal defendant. (See *Beachcomber Management Crystal Cove, LLC v. Superior Court* (2017) 13 Cal.App.5th 1105, 1118.)

## DISPOSITION

The judgment is reversed as to defendants Element, Emilie Lee, Jin Luo, and Robert Luo. The order sustaining the demurrer to the third amended complaint without leave to amend is reversed with regard to causes of action for breach of fiduciary duty, breach of the operating agreement, and conversion. On remand, plaintiff may proceed with the surviving causes of action in the third amended complaint as currently pleaded. Or plaintiff may, if she opts to do so, amend the complaint to plead these causes of action as brought both derivatively on behalf of the Company, Poki Cat Innovations, LLC, and individually. If plaintiff chooses to amend the third amended complaint, she shall make clear with regard to each alleged breach whether she is pursuing an individual theory of recovery, a derivative theory of recovery, or both theories of recovery in the alternative. The development of facts in discovery and the application of pertinent case law shall dictate whether these causes of action are properly adjudicated as derivative claims, individual claims, or both. If plaintiff amends the complaint to include derivative claims, plaintiff shall include the Company, Poki Cat Innovations, LLC, as a nominal defendant in the amended complaint.

The order sustaining the demurrer to the third amended complaint without leave to amend is affirmed with regard to the causes of action for promissory fraud and constructive fraud. The judgment of dismissal is affirmed as to defendant Lin Yun Xiang.

17

In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


DELANEY, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.